IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Shaker Construction Group, LLC, | : | Case Number: 1:08cv278 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING MOTION OF |
| | : | DEFENDANTS LLCP AND |
| Richard J. Schilling, Jr., *et al.*, | : | LIBRA SECURITIES TO DISMISS |
| | : | AMENDED COMPLAINT |
| Defendants. | : | |

Before the Court is the motion to dismiss of Defendants Levine Leichtman Capital Partners III, L.P. ("LLCP") and Libra Securities, LLC ("Libra") (doc. 30). For the following reasons, the motion is **GRANTED**.

**BACKGROUND**[1]

This is a combination individual and derivative action brought by Plaintiff Shaker Construction Group, LLC ("Shaker"), an Ohio LLC, against SWG Holdings and six other defendants, including LLCP and Libra. Shaker's fifteen claims arise out of the Defendants' alleged violation of Shaker's rights as a member of SWG Holdings and as the holder of an Amended and Restated Membership Unit Purchase Warrant (the "Warrant")[2] that gives Shaker the right to subscribe to and purchase additional Warrant Units in SWG Holdings.

Shaker is the construction manager of a casino/hotel project located in Greenville, Mississippi. Defendant SW Gaming owns and operates the casino, and Defendant SWG Holdings is the parent company of SW Gaming. Defendant Libra is a Delaware limited liability

---

[1] Background information is taken from Shaker's first amended complaint (doc. 24), LLCP and Libra's motion to dismiss (doc. 30), Shaker's memorandum in opposition (doc. 37), and LLCP and Libra's reply (doc. 40).

[2] The Warrant is attached to doc. 24 as Ex. A.

company that represented SWG Holdings in the offerings of securities and is a member of SWG Holdings. Defendant LLCP is a California limited partnership that possesses the original Warrant and owns a percentage of units of membership interest in SWG Holdings greater than any other member. The rights and obligations of the members of SWG Holdings are governed by an Amended and Restated Limited Liability Company Agreement, as amended by the Equity Restructuring Agreement and First Amendment to Parent Operating Agreement (the "Operating Agreement").[3]

The crux of Shaker's Complaint is that the Defendants mismanaged SWG Holdings, devalued the Warrant, and diverted corporate funds for their personal benefit. Defendants LLCP and Libra move to dismiss Shaker's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), 8, 9(b), and 12(b)(3).

**DISCUSSION**

**I.    Personal Jurisdiction**

The plaintiff bears the burden of proving that the court may properly exercise personal jurisdiction over the defendant. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). In the absence of an evidentiary hearing, as is the case here, a plaintiff need only make a prima facie showing of personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction." *Id*. (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In determining whether Shaker has made a prima facie showing that the Court has personal jurisdiction over Defendants LLCP and Libra, the Court must view all pleadings and affidavits in a light most favorable to Shaker. *Id.*

---

[3] The Operating Agreement is attached to doc. 24 as Ex. B.

In a diversity case, the court looks to the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir. 1989)). The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *Id.*; *see also Brunner v. Hampson*, 441 F.3d 457, 465 (6th Cir. 2006) (citing *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). Therefore, the Court must conduct two separate inquiries: whether the requirements of Ohio's long-arm statute, Ohio Rev. Code § 2307.382, are satisfied in this case and, if so, whether the Fourteenth Amendment's Due Process Clause is a limitation on this Court's exercise of personal jurisdiction over LLCP and Libra. *See Brunner*, 441 F.3d at 465-66 (6th Cir. 2006) (concluding that because Ohio's long-arm statute has a different scope than the Due Process Clause, the two issues must be analyzed separately).

      A.      **Ohio's Long Arm Statute**

Ohio's long-arm statute enumerates nine categories of conduct that subject a person to personal jurisdiction in Ohio if a cause of action arises out of such conduct. Ohio Rev. Code § 2307.382(A). Shaker argues that jurisdiction over LLCP and Libra is appropriate under subsections (1) and (6) of the statute, which allow a court to "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's (1) Transacting any business in this state; . . . [or] (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A).

      1.      **Transacting Any Business**

Defendants argue that they have not transacted business in Ohio within the meaning of

3

Ohio Rev. Code § 2307.382(A)(1).  Steven Hartman, vice president and manager of LLCP, declared that LLCP has never sold, leased, invested in, or owned any real property in Ohio, has never been a party to any litigation in Ohio (other than this litigation), has never directed any advertising towards Ohio consumers, has not purchased or sold any goods, nor offered any goods for purchase or sale, in Ohio, and is not a party to any contract that contains a forum selection or choice of law provision designating Ohio as the governing court or law.  (Hartman Decl., doc. 30-4 ¶¶ 5-8.)

Michael Coster, managing director for Libra, does not deny that he participated in negotiations with Shaker.  However, he denies ever participating in negotiations with Shaker in Ohio, declaring that all face-to-face negotiations took place in Kentucky or California.  (Second Coster Decl., doc. 40-2, ¶ 3.)  He also refutes that he ever held himself out as representing the interests of LLCP.  (Coster Decl., doc. 30-3 ¶ 3.)  LLCP and Libra emphasize that they are not parties to the Warrant–the document that underlies the claims in this case.  (*See* First Amended Complaint, doc. 24 at ¶¶ 4-8, describing the nature of the action.)

Shaker contends that Libra and LLCP did, in fact, transact business in Ohio within the meaning of the statute because they negotiated transactional documents[4] with Shaker by means of telephone calls and correspondence directed to Mr. Brunsman, Shaker managing member, whose home and office are located in Hamilton County, Ohio.  (Brunsman Decl., doc. 27-2, ¶ 12.)  Conference calls concerning the negotiation of these documents often included Mr. Ravich, the CEO/president of Libra, and Mr. Coster, managing director of Libra.  (*Id*. ¶ 13.)  Mr. Brunsman asserts that Mr. Coster personally came to Ohio and met with Mr. Brunsman and other

---

[4] The following documents were allegedly negotiated through correspondence directed to Shaker in Ohio: the Construction Contract, the Warrant, the Investor Rights Agreement, the Amended and Restated Limited Liability Company Agreement, and the Securities Purchase Agreement.  (Brunsman Decl., doc. 27-2, ¶ 12.)

Shaker representatives to negotiate the terms of the agreements. (*Id.* ¶ 14.) According to Shaker's representatives, Mr. Coster held himself out as representing the interests of Libra as well as the interests of LLCP. (*Id.* ¶ 14; Meehan Decl., doc. 37-2, ¶ 5.) In addition, Shaker notes that the Warrant contains a forum selection clause that provides that any suit brought "with respect to, or to enforce the terms of, this Amended Warrant *or any other agreement provided for herein or related thereto*" shall be brought in Ohio. (Doc. 24-2 at 13 (emphasis added).) Other agreements referenced in the Warrant include the Equity Structuring Agreement and First Amendment to Parent Operating Agreement, to which both Libra and LLCP are parties, and an Amended Investor Rights Agreement, to which LLCP is a party. (Brunsman Decl. ¶ 10.)

In the absence of an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, where there are discrepancies between the plaintiff's and defendant's allegations, the Court must consider the information in a light most favorable to the plaintiff. *CompuServe*, 89 F.3d at 1262. Thus, the Court will assume for the purposes of resolving the motion to dismiss that Messrs. Ravich and Coster directed communications to Shaker in Ohio concerning the negotiation of certain transactional documents, including the Warrant, that Mr. Coster traveled to Ohio to negotiate the terms of some of these documents, and that Mr. Coster held himself out as representing the interests of LLCP.

The term "transacting business" has been defined by Ohio courts to mean "to carry on business" and "to have dealings" in the state of Ohio. *Goldstein*, 70 Ohio St. 3d at 236. Transacting business "is a broader term than the word contract." Two factors help determine whether an out-of-state defendant "transacted business" within the meaning of the long-arm statute:

> The first factor is whether the out-of-state defendant initiated the
> business dealing. . . . If the defendant reached out to the plaintiff
> in the forum state to create a business relationship, the defendant
> transacted business in the forum state. . . . The second factor is

5

> whether the parties conducted their negotiations or discussions in the forum state or with terms affecting the forum state. . . .  If the parties negotiated in the forum state with provisions affecting the forum state, the defendant transacted business in the forum state.

*Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D. Ohio March 16, 2007) (citing *Ricker v. Fraza*, 160 Ohio App.3d 634, 828 N.E.2d 205, 210 (Ohio Ct. App. 2005)).  In addition to these two factors, the plaintiff also must demonstrate that there is a substantial connection between the defendant and the forum state.  *Id.* (citing *U.S. Sprint Commc'ns Co. Ltd P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052 (Ohio 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985))).

Even construed in a light most favorable to Shaker, the alleged facts are insufficient to confer personal jurisdiction over either LLCP or Libra under the "transacting business" subsection of Ohio's long-arm statute.  As to the first factor of the "transacting business" analysis articulated in *Paglioni*, Shaker does not allege that Libra or LLCP initiated the negotiations between them.  To the contrary, Shaker states that SWG Holdings, not LLCP or Libra, approached Shaker to infuse capital into the casino project.  (Am. Compl., doc. 24, ¶ 24.)

As to the second factor, although Shaker alleges that Mr. Coster came to Ohio to negotiate the terms of transactional documents and that Mr. Ravich participated in conference calls directed to Ohio (Brunsman Decl. ¶¶ 12-14), there are no allegations that any negotiations or terms of the agreements *affected* the forum state of Ohio.  Merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business" within Ohio.  Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.  *See*, *e.g.*, *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 559 N.E.2d 477, 480 (Ohio 1990) (holding that nonresident lessee was "transacting any business" in the state where it negotiated, and through the course of dealing

6

became obligated, to make payments to its lessor in Ohio); *U.S. Sprint Commc'ns Co. Ltd P'ship*, 624 N.E.2d at 1052 (holding, in a lawsuit to collect unpaid long-distance phone charges, that the defendant transacted business in Ohio by using U.S. Sprint long distance to conduct business in Ohio and to take orders from its Ohio independent distributors for goods to be sold in Ohio).

In this case, the negotiations between the parties pertained to a project located in Mississippi. Neither LLCP nor Libra are parties to any agreement with Shaker that includes terms affecting the state of Ohio. The Court cannot, therefore, exercise jurisdiction over LLCP or Libra under Ohio Rev. Code § 2307.382(A)(1) based on the allegations of the Amended Complaint or the affidavits provided by Shaker.

### 2. Causing Tortious Injury in This State by an Act Outside This State

Shaker additionally argues that jurisdiction under subsection (A)(6) of the statute is proper because the Defendants caused tortious injury in Ohio through misrepresentations, citing paragraphs 31, 40, 47-49, 52, 58-59 of the Amended Complaint. District courts in this circuit have held that alleged fraudulent communications can satisfy the "causes tortious injury by an act or omission in this state" portion of the Ohio long-arm statute. *See*, *e.g.*, *Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp.2d 539, 548 (N.D. Ohio 2003) (holding that subsection (A)(6) was satisfied where a nonresident defendant made fraudulent misrepresentations to Ohio resident in communications to Ohio); *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 829 (N.D. Ohio 1996) (holding that the nonresident defendant's acts of negligent misrepresentation and intentional fraud caused injury in Ohio and thus brought the action under the sixth category of the long-arm statute).

The portions of the Amended Complaint cited by Shaker only vaguely allege misrepresentations by Libra or LLCP. For example, the Amended Complaint alleges that Mr.

Coster told Shaker that LLCP would not participate in financing the casino project unless Shaker agreed to a modified management fee under the Construction Contract, but there is no allegation that this statement was untrue. (Doc. 24 ¶ 31.) It alleges that SWG Chief Financial Officer Mr. Lalor told Shaker that LLCP and Libra did not want Shaker to see SWG's financial information, yet there is no allegation that LLCP or Libra misrepresented or concealed SWG's financial information in communications to Shaker. (*Id.* ¶ 40.) Finally, the Amended Complaint alleges only "upon information and belief" that "Libra and/or LLCP were aware of Schilling's . . . side deals with investors . . . [but Michael Coster] never disclosed it to Shaker." (*Id.* ¶ 59.)

Because of the vagueness of the allegations of misrepresentation by Libra and LLCP, this case is distinguishable from those where a defendant was found to have satisfied the "causing tortious injury" requirement by committing fraudulent acts in Ohio on an ongoing, repetitive and continuous basis over a substantial period of time. *See*, *e.g.*, *FRC Intern., Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, No. 3:01-cv-7533, 2002 WL 31086104, *4 (N.D. Ohio Sept. 18, 2002). However, because our sister courts have taken a broad approach to jurisdiction under subsection (6) of Ohio's long-arm statute, and because a plaintiff's burden of establishing a prima facie case of personal jurisdiction over a defendant is "relatively slight," the Court finds that jurisdiction exists over LLCP and Libra under Ohio Rev. Code § 2307.382(A)(6).[5]

### B. Federal Due Process

Having found that Ohio's long-arm statute provides the Court with authority to exercise

---

[5] The Court has reservations about finding that Libra and LLCP's alleged actions suffice to allow the Court to exercise jurisdiction over them under subsection (6) of the long-arm statute. Particularly troublesome is the notion that a nonresident defendant would be subject to jurisdiction under the long-arm statute merely because the plaintiff alleged that he made misrepresentations to the plaintiff that caused financial injury. However, the Court is satisfied that the protection afforded to nonresident defendants by the Due Process Clause will prevent any unfair results–as is the case here.

8

jurisdiction over Libra and LLCP, the Court must now, as is required by the Due Process Clause of the Constitution, determine whether these Defendants have had "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Shaker asserts that the Court can constitutionally exercise specific personal jurisdiction over LLCP and Libra under the three-prong test set forth in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968): (1) the defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Id*. at 381.

### 1. Purposeful Availment

"The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id*. at 721-22 (quoting *LAK, Inc.*, 885 F.2d at 1301). The Supreme Court explained the criteria of the "purposeful availment" prong this way:

> Jurisdiction is proper . . . where the [defendant's] contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal citations omitted).

Application of these criteria to the facts of this case reveals that LLCP and Libra did not

9

purposefully avail themselves of the privilege of acting in Ohio or causing a consequence in Ohio. Shaker relies primarily on the acts of Mr. Coster, Libra's managing director, to argue that both LLCP and Libra satisfied the purposeful availment prerequisite to personal jurisdiction. Specifically, Shaker states that "Mr. Coster—Libra and LLCP's agent, negotiated the Warrant and related documents through literally hundreds of extensive telephone calls, letters and e-mails directed to Shaker in Hamilton County, Ohio, as well as through face-to-face meetings in Ohio. Libra and LLCP are now actively thwarting Shaker's rights with respect to its Warrant, and diluting the value of SWG Holdings, as a whole." (Doc. 37 at 11.)

Even assuming that Mr. Coster was acting as an agent of LLCP and Libra and that he negotiated the Warrant and related documents through communications directed to Shaker in Ohio and personal visits to Ohio, Sixth Circuit precedent reveals that this is insufficient to constitute purposeful availment. In *Cole v. Mileti*, the Sixth Circuit found that "[i]f . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." 133 F.3d 433, 436 (6th Cir. 1998). However, the facts of *Cole* are distinguishable from those in this case, most notably because *Cole* was a breach of contract action arising out of a contract between an Ohio resident and a California resident who had an ongoing business relationship for many years. In this case, the only contract at issue in this lawsuit is the Warrant, and neither LLCP nor Libra are parties to the Warrant. Furthermore, any relationship between Shaker and LLCP or Libra began in 2006, less than two years before this lawsuit was filed, and there is no allegation that either of the Defendants had an ongoing relationship with Shaker.

The Court finds that this case is more analogous to *Calphalon Corporation v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). In *Calphalon*, the court found that the existence of a contract

10

between a non-resident and an Ohio citizen was insufficient to confer personal jurisdiction over the non-resident when the defendant's contacts with the state existed because the plaintiff happened to be located there, not because the defendant sought to create "continuous and substantial contacts" with Ohio, and when the performance of the agreement was not connected to Ohio. *Id*. at 723; *see also Condon v. Flying Puck, LLC.*, 35 Fed. App'x 173, 174 (6th Cir. 2002) (holding that a non-resident defendant was not subject to personal jurisdiction in Ohio in action for breach of employment contract, even though contract negotiations took place in Ohio, where claimed breach arose from employer's failure to compensate employee for work performed in California). In so finding, the *Calphalon* court expressly admonished against focusing on the *quantity* of the defendant's contacts with the forum state and emphasized the importance of the *quality* of the contacts and of the parties' relationship. *Id*. at 722.

In this case, the focus of Shaker's argument is the quantity of Mr. Coster's contacts with Ohio during the negotiation of transactional documents. Importantly, Shaker does not allege any facts that connect the subject matter or the performance of the documents to Ohio. To the extent that Libra or LLCP are allegedly thwarting Shaker's rights with respect to the Warrant, any such actions cannot be deemed to be purposely directed at Ohio. Rather, the actions would be directed at Shaker regardless of where it was located. The Sixth Circuit has ruled that a defendant's contacts with a forum state that occur solely because the plaintiff chose to be located there are "precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id*. at 723; *see also Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 (S.D. Ohio March 16, 2007) (granting motion to dismiss for lack of personal jurisdiction where the only connection between the subject matter of the complaint and Ohio was that the plaintiff happened to be situated there). Because LLCP and Libra's alleged contacts with Ohio occurred

11

only because Shaker was located there, and because the subject matter of any agreements between the parties related to a casino project in Mississippi, these Defendants did not purposefully avail themselves of the privilege of acting in Ohio.

### 2. Cause of Action Arising Out of In-State Activities

Having found that Shaker has not made a prima facie showing on the "essential" prong of the *Southern Machine Co.* test, purposeful availment, the Court cannot exercise personal jurisdiction over LLCP or Libra. *See Calphalon Corp.*, 228 F.3d at 721. However, the Court will undertake to analyze Shaker's allegations with respect to the remaining two prongs of the *Southern Machine Co.* test. Under the second prong of the test, the Court must determine whether "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 724 (citing *Southern Machine Co.*, 401 F.2d at 384). In arguing that Defendant's contacts with Ohio are related to the operative facts of the controversy, and thus that the action arose from those contacts, Shaker relies on the Warrant, which includes an Ohio forum selection clause. Shaker claims that, although LLCP and Libra are not parties to the Warrant, they were "on notice" that the Warrant called for jurisdiction before this Court because it references agreements to which LLCP and Libra are parties, such as the Equity Restructuring Contract.

To determine whether the instant dispute arose from LLCP or Libra's activities in Ohio, the Court must look to where the operative facts of the controversy arose. The crux of the Amended Complaint is Defendants' alleged devaluation of and breach of the Warrant. Although Shaker alleges that Mr. Coster helped negotiate the Warrant in Ohio, there is no allegation that anyone from Libra or LLCP acted in Ohio to devalue or breach the Warrant. Furthermore, neither LLCP nor Libra are parties to the Warrant and thus cannot be charged with its breach. With the exception of Mr. Coster's alleged involvement in negotiating the Warrant and other

12

transactional documents in Ohio, none of the facts at issue occurred in Ohio, nor were the consequences of any alleged breach substantially connected to Ohio. Accordingly, the operative facts of the controversy are not related to Libra or LLCP's alleged contact with the state of Ohio.

### 3. Reasonableness of Jurisdiction

The third prong of the *Southern Machine Co.* test asks whether a substantial enough connection exists between the defendant and the forum state to make the exercise of jurisdiction over the defendant reasonable. 401 F.2d at 381. Jurisdiction is reasonable as long as it comports with "traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1268 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987)). The following factors contribute to whether jurisdiction is reasonable: (1) the burden on the defendant to litigate in the state, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) the interest of other states in securing the most efficient resolution of the controversy. *Id*.

While Ohio has an interest in protecting its resident and Shaker plainly has an interest in obtaining relief, the burden on Libra and LLCP in defending a suit in a state with which it has no substantial connection outweighs those interests. Neither Libra nor LLCP entered into any agreements with Shaker calling for jurisdiction in an Ohio court or calling for any performance in Ohio. Whatever contacts these Defendants might have had with Ohio existed purely because Shaker happens to be located there. To the extent there are issues between the parties that stem from agreements pertaining to the casino project, Mississippi is the state with an interest in resolving those issues. In summary, even considering the allegations in a light most favorable to Shaker, Shaker has not made a prima facie showing of personal jurisdiction over LLCP or Libra under federal due process, and the Court lacks personal jurisdiction over those Defendants.

**CONCLUSION**

For the reasons set forth above, the Court hereby **GRANTS** Defendants LLCP and Libra's motion to dismiss. (Doc. 30.) The Amended Complaint (doc. 24) is hereby dismissed with prejudice as to LLCP and Libra.

IT IS SO ORDERED.

                                                                                                             s/Susan J. Dlott
Susan J. Dlott
United States District Judge